**WEBBER MCGILL LLC**
Douglas J. McGill, Esq.
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Debtor-in-Possession*

**Order Filed on September 26, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>PLA Four 107 LLC,<br><br>       Debtor-in-Possession. | Chapter 11<br><br>Case No. 24-16217-VFP |

**FINAL ORDER (I) APPROVING STIPULATION AUTHORIZING USE OF
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III)
GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through four (4), is hereby

**ORDERED**.

**DATED: September 26, 2024**

_____
**Honorable Vincent F. Papalia
United States Bankruptcy Judge**

Debtor: PLA Four 107 LLC
Case No: 24-16217 (VFP)
Caption of Order: Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and (III) Granting Related Relief

This matter is before the Court on the motion (the "Motion") of PLA Four 107 LLC, the debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, Webber McGill LLC, for entry of a final orders authorizing the Debtor to use cash collateral pursuant to title 11 of the United States Code (the "Bankruptcy Code") sections 105, 363(c)(2)(B), 363(e) of title 11 of the United States Code (the "Bankruptcy Code"). Notice of the Motion, together with notice of the final hearing thereon, has been given and served by the Debtors to (i) the Office of the United States Trustee; (ii) counsel to the Lender; (iii) each of the Debtor's twenty (20) largest unsecured creditors; (iv) any other parties claiming an interest in the cash collateral; and (v) any other party that has requested notice. After due deliberation and good and sufficient cause appearing for the entry of the within Order, it is hereby found:

A. **Notice and Hearing**. Notice of the Motion and of the final hearing on the Debtor's use of cash collateral has been served consistent with the notice and hearing provisions pursuant to 11 U.S.C. § 102(1) and Fed. R. Bankr. P. 4001(b), and this Court's Interim Order authorizing use of cash collateral [Docket No. 29], which notice is appropriate in the particular circumstances and sufficient for all purposes under the Bankruptcy Code and applicable Federal and Local Rules of Bankruptcy Procedure with respect to the relief requested.

B. **Chapter 11 Filed**. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on June 20, 2024 (the "Petition Date"), and is presently a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner or official committee of unsecured creditors (a "Committee") has been appointed in this chapter 11 case.

C. **Pre-Petition Debt**. 107 New Street Owner LLC ("Lender") asserts claims against the Debtor as described in that certain stipulation attached hereto as Exhibit A (the "Cash Collateral

2

Debtor:            PLA Four 107 LLC
Case No:           24-16217 (VFP)
Caption of Order:  Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and
                   (III) Granting Related Relief

Stipulation"), secured by liens on all or substantially all of the assets of the Debtor, including, without limitation, the Debtor's cash and other property constituting "Cash Collateral" as defined by 11 U.S.C. § 363(a).

**D. Necessity and Best Interest**. The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in chapter 11. The Debtor requires immediate authority to use cash collateral as defined herein in order to continue its business operations without interruption toward the objective of formulating an effective plan of reorganization. The Debtor's use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to its estate pending a final hearing. The amount of Cash Collateral authorized to be is not to exceed the amounts reflected in the Debtor's budget (the "Budget") annexed to the Cash Collateral Stipulation attached hereto as Exhibit A. The terms of the Debtor's use of Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and constitute reasonably equivalent value and fair consideration.

**E. Purposes**. The Debtor is authorized to use Cash Collateral in accordance with the terms of the Cash Collateral Stipulation and the Budget, to meet the its ordinary cash needs (and for such other purposes as may be approved in writing by the Lender) for the payment of the Debtor's actual expenses to (a) maintain and preserve its assets; and (b) continue operation of its business, including but not limited to payment for maintenance, repairs, utilities, payroll, payroll taxes, and insurance expenses as reflected in the Budgets.

3

Debtor:          PLA Four 107 LLC
Case No:         24-16217 (VFP)
Caption of Order:  Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and
(III) Granting Related Relief

The Court having determined there is a reasonable likelihood that the Debtor will prevail

upon the merits at the final hearing of the Motion as required by Section 363(c)(3) of the Bankruptcy

Code; and for good cause shown, it is

**ORDERED** as follows:

1.      Approval of Cash Collateral Stipulation. The Cash Collateral Stipulation is approved

on a final basis, and incorporated herein by reference. The Debtor is authorized, for the periods and

in accordance with the Budget to use cash collateral as set forth in such Budget.

2.      Adequate Protection. For the avoidance of doubt, the adequate protection provisions

of the Cash Collateral Stipulation, including the Adequate Protection Payments (as defined therein),

are approved and effective upon entry of this Order.

3.      No Modification of Lender's Adequate Protection. Nothing contained herein shall

be deemed or construed to (a) limit the Lender to the relief granted herein; (b) bar the Lender from

seeking other and further relief (including, without limitation, relief from the terms of this Order) for

cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of

same; or (c) require the Lender to make any further loans or advances to the Debtor. This Order

may be modified for cause shown by the Debtor, the Lender, or any other party-in-interest on due

notice. No such modification, however, shall deprive the Lender of its interests in the Debtors'

property (pre-petition and post-petition).

4.      Relief from the Automatic Stay. The automatic stay imposed by 11 U.S.C. § 362(a)

of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to implement and

effectuate the terms and conditions of this Order.

4

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>PLA FOUR 107 LLC,<br><br>Debtor. | Chapter 11<br>Case No. 24-16217 (VFP)<br><br>Hearing Date: TBD<br>Hearing Time: TBD |

**STIPULATION (I) ESTABLISHING THE EXTENT, VALIDITY, AND
PRIORITY OF LENDER'S LIENS AND DEADLINES FOR COMMENCING
ANY CHALLENGES; (II) AUTHORIZING THE USE OF CASH COLLATERAL
AND RENTS; (III) GRANTING ADEQUATE PROTECTION TO LENDER; AND
(IV) GRANTING RELATED RELIEF**

This Stipulation (the "Stipulation"): (I) establishing the extent, validity, and priority of the liens of 107 New Street Owner LLC (referred to herein with any affiliated entity as the "Lender") and deadlines for commencing any challenges to those liens; (II) authorizing the use of the Lender's cash collateral; (III) granting adequate protection to the Lender; and (IV) granting related relief, is entered into by and between PLA Four 107 LLC, the above-captioned debtor and debtor in possession (the "Debtor") and the Lender.

## RECITALS

A.  Petition. On June 20, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court" or the or this "Court").

B.  Debtor in Possession. The Debtor is in control of its business and property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.  Jurisdiction and Venue. This Court has jurisdiction over the Debtor's Chapter 11 case (the "Case") pursuant to 28 U.S.C. §§ 157 and 1334 and over the persons and property affected hereby. Consideration of this Stipulation constitutes a core proceeding under 28 U.S.C.

-1-

§ 157(b)(2). Venue of the Debtor's Case is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

D.      <u>Debtor Property</u>. The Debtor is the owner of real property commonly known as 107 New St., East Orange, New Jersey 07017 (the "<u>Debtor Property</u>").

E.      <u>Loan and Mortgage</u>. On or about November 9, 2021, Arbor Private Label, the original lender and a Lender entity, loaned the Debtor the principal sum of $9,460,000.00 evidenced by that certain Promissory Note, dated as of November 9, 2021 (the "<u>Note</u>"), pursuant to which the Debtor promised to pay to the order of Arbor Private Label, LLC ("<u>APL</u>") together with its successors and assigns, the sum of $9,460,000.00, together with interest thereon payable as set forth in the Note and that certain Loan Agreement (defined below), and such other amounts as are payable thereunder (the "<u>Debtor Mortgage Loan</u>"). As security for the payment of the Debtor's obligations under the Note, the Debtor executed and delivered to APL together with its successors and assigns that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated November 9, 2021 (the "<u>Mortgage</u>") securing the principal amount of $9,460,000.00 and encumbering, as a first priority lien, the Debtor Property and respective improvements thereon, and personal property located on or relating to the Debtor Real Property, and all appurtenances thereto (collectively, the "<u>Prepetition Collateral</u>"). The Mortgage was duly recorded on December 8, 2021, in the Essex County Register in Instrument Number 2021144953 and the relevant fees were paid. APL, together with its successors and assigns, duly perfected its security interest in the Debtor's personal property by filing and recording, on December 8, 2021, a UCC-1 financing statement with the Essex County Register in Instrument Number 2021144955 (the "<u>UCC-1</u>"). The UCC-1 financing statement was also filed with the State of New Jersey, Department of Treasury, Division of Revenue & Enterprise Services (the "<u>NJ</u>

-2-

Treasury") in Filing Number 55560221 on November 9, 2021. As additional security for repayment of the Note, the Debtor and APL entered into a Loan and Security Agreement, dated as of November 9, 2021 (the "Loan Agreement") that sets forth, among other things, the terms and conditions of the Debtor Mortgage Loan. In addition, Thomas J. Caleca ("Caleca"), the Debtor's principal, executed and delivered that certain Guaranty of Non-Recourse Obligations, dated November 9, 2021 (the "Guaranty") to APL together with its successors and assigns. The Note, Mortgage, Loan Agreement, Guaranty, and other related loan documents are collectively referred to as the "Loan Documents." Pursuant to those certain allonges, endorsements, assignments, and amendments, dated prior to the date hereof, the Lender owns and holds the Note and is authorized to enforce the Loan Documents.

F.      Prepetition Collateral. As a result of the Mortgage, the UCC-1, and the related and underlying Loan Documents, the Lender asserts that it holds security interests in, and liens on (the "Prepetition Liens") all of the Debtor's real and personal property and fixtures, in each case whether then or thereinafter existing or then owned or thereafter acquired and whether subject to the Uniform Commercial Code including, but not limited to, all goods, money, contract rights, instruments, accounts, farm products, inventory, equipment, documents, chattel paper, securities and general intangibles and all interest, dividends and other distributions paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of all of the foregoing (collectively, the "Prepetition Collateral"). Prepetition Collateral is intended to include any cash collateral as that term is defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral").

G.      Absolute Assignment of Rents. By virtue of the Mortgage and related Loan Documents, the Lender holds an absolute assignment of the rents generated by the Debtor Property

-3-

(collectively, the "Rents"). The Lender has agreed to permit the Debtor's use of the Rents and its Cash Collateral on the terms and conditions of this Stipulation, with a full reservation of rights upon any expiration of the term of this Stipulation.

H.      Loan Balances. The Lender asserts that the Debtor is indebted to the Lender exclusive of legal expenses, costs, insurance, accrued prepetition interest, and taxes, in the principal amount of not less than $9,460,000.00 on account of the Debtor Mortgage Loan (the "Secured Prepetition Obligations").

I.      The Debtor and the Lender (collectively, the "Parties") desire to enter into this Stipulation to set forth their agreements and understandings and in order to seek the Court's authorization pursuant to Sections 361 and 363(c) of the Bankruptcy Code and Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), (I) establishing the extent, validity, and priority of the Lender's Prepetition Liens and deadlines for commencing any challenges to those Pre-Petition Liens, the absolute assignment of Rents, and underlying claims; (II) authorizing the Debtor's use of the Lender's Cash Collateral and Rents; and (III) granting adequate protection to the Lender.

## STIPULATION

NOW, THEREFORE, with the foregoing background deemed incorporated hereinafter, the Parties, intending to be legally bound hereby, promise and agree as follows:

1.      Incorporation of Recitals. The foregoing recitals are hereby incorporated herein by reference hereby, are expressly acknowledged and agreed to by the Parties, and shall have the same force and effect as if in the body of this Stipulation.

2.      Bankruptcy Court Approval. This Stipulation is subject to the Bankruptcy Court's entry of one or more interim orders (each an "Interim Order") and a final order (a "Final Order") approving this Stipulation on an interim and final basis. If this Stipulation is not approved by entry

of a Final Order within thirty-five (35) days of entry into this Stipulation, then this Stipulation shall be void *ab initio* except as approved on an interim basis by any Interim Order, or as otherwise consented to in writing by the Lender.

3.      Term of Agreement. The Debtor's authorization, and Lender's consent, to use Cash Collateral shall terminate on the earliest to occur of (the "Termination Date"): (i) the entry of an order of this Court terminating such right; (ii) the dismissal of the Case or the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; or (iii) the expiration of the Remedies Notice Period following the delivery of a Termination Declaration (each as defined herein) by the Lender, according to the procedures set forth in Paragraph 11 below.

4.      Stipulation Regarding Amount of Secured Prepetition Obligations. Subject to the rights of Challenge set forth in Paragraph 17 below, the Debtor stipulates and agrees that as of the Petition Date, pursuant to the Loan Documents, the Debtor is indebted to the Lender in the principal amount of not less than $9,460,000.00, exclusive of accrued prepetition interest, legal expenses, costs, insurance, and taxes, in the amount of on account of the Debtor Mortgage Loan. All rights are reserved by all Parties with respect to any amount due the Lender on the Prepetition Secured Obligations to the extent that it exceeds the principal indebtedness of $9,460,000.00.

5.      Stipulation Regarding Liens. Subject to the rights of Challenge, the Debtor further stipulates and agrees that the Secured Prepetition Obligations are secured by the respective Prepetition Liens granted by the Debtor to Lender upon and in the Prepetition Collateral and that such liens are valid unavoidable liens, properly perfected as of the Petition Date. Any cash in the Debtor's possession or control as of the Petition Date and all cash coming into the Debtor's possession after the Petition Date that constitutes proceeds of the Prepetition Collateral is Cash Collateral of the Lender within the meaning of Section 363(a) of the Bankruptcy Code. The Lender

is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral to the extent there is any use of Cash Collateral, or the use, sale, or lease of the Prepetition Collateral (other than the Cash Collateral), and for the imposition of the automatic stay.  Further, any Rents collected with respect to the Debtor Property were absolutely assigned to the Lender.  The Lender's consent to use its Rents are expressly conditioned on the terms of this Stipulation and shall terminate immediately upon the Termination Date.

6.      Management of the Real Property and Use of Cash Collateral.

(a)      Budgets. The Debtor may use Rents and Cash Collateral in the operation of its business and management of the Prepetition Collateral during the term of this Stipulation.  The Cash Collateral and Rents shall be used by the Debtor in a manner consistent with the terms and conditions of this Stipulation and in accordance with the budget for the Debtor attached hereto as Exhibit 1 (the "Budget"), which will change periodically as set forth herein, and is subject to the Permitted Budget Variance (as defined herein).  During the period of the Debtor's authority to use Cash Collateral and Rents, the Debtor shall provide the Lender with its rolling updated 4-week cash flow forecasts and Budget together with actual income and expenditures for prior periods within five (5) business days following the end of each two-week period commencing Friday, July 26, 2024.  Each Budget shall be in the same format as the Budgets attached hereto.

(b)      Permitted Budget Variance. The Debtor may use the Cash Collateral solely to pay the ordinary, necessary and reasonable expenses of operating its business exclusively in accordance with and subject to the Budget.  The Debtor's actual disbursements for any given month shall not exceed the sum of (x) 110% of the disbursements projected for the Budget (the "Permitted Budget Variance").  The Budget and any modification to, or extension, amendment or

update of the Budget, shall be in a form and substance acceptable to the Lender in its sole discretion.

(c)    Adequate Protection Payments. The Debtor's use of Cash Collateral and Rents is expressly conditioned upon its timely making the monthly adequate protection payment to the Lender in the amount of $23,000.00 (the "Adequate Protection Payments"), which amount is subject to change in future Budgets.  All Adequate Protection Payments will be sent to the Lender via ACH or wire transfer pursuant to the instructions annexed hereto as Exhibit 2.

(d)    Property Tax and Insurance Escrow.  All amounts owed by the Debtor for Property Taxes and Insurance, including without limitation, the amounts set forth in the Budget, will be paid to the Lender by wire transfer monthly on or before the last day of the month to be held and disbursed from escrow for the stated purpose (the "Tax and Insurance Escrow"). Notwithstanding the foregoing, the Debtor anticipates financing the premium for insurance on the Property in the amount of approximately $48,000 in a manner that will require an initial payment in the amount of approximately $9,600 upon entry into a financing agreement, and ten successive monthly payments in the approximate amount of $3,840 during the months of October 2024 through August 2025, which amounts are included in the Budget in estimated amounts.  In the event that the Debtor is unable to finance the premium for insurance on the Property, the Debtor anticipates that the full amount of the premium in the approximate amount of $48,000 will be due in September 2024, and the Debtor will pay to Lender by wire transfer on or before the last day of August 2024 the amount necessary so that the full amount of the premium is held in the Tax and Insurance Escrow in addition to any amounts owed on account of Property Taxes.

7.      Adequate Protection.  In addition to the Adequate Protection Payments, the Lender

shall receive the following forms of adequate protection on account of the Debtor's use of the

Lender's Cash Collateral and Rents:

(a)     Adequate Protection Liens.  The Lender has additional and replacement

valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security

interests in and liens (the "Adequate Protection Liens") to secure any diminution in value of its

interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash

Collateral, the authorized use, sale or lease of Prepetition Collateral, and the imposition of the

automatic stay (collectively, the "Diminution in Value"), without the necessity of the execution by

the Debtor (or recordation or other filing) of security agreements, control agreements, pledge

agreements, financing statements, mortgages, or other similar documents, on all property, whether

now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's

"estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature

whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or

created, including, without limitation, all cash, accounts, inventory, goods, contract rights,

instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor,

accounts receivable, receivables and receivables records, general intangibles, payment intangibles,

tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property

leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments,

investment, property, letter-of-credit rights, supporting obligations, machinery and equipment, real

property, leases (and proceeds from the disposition thereof), other equity or ownership interests,

including equity interests in any subsidiaries and non-wholly owned subsidiaries, money,

investment property, and causes of action (including causes of action arising under section 549 of

-8-

the Bankruptcy Code, but excluding all other avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "Postpetition Collateral").

(b)    Priority of the Adequate Protection Liens.  The Adequate Protection Liens are junior only to the: (A) the Prepetition Liens, and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code).  The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, any subsequently appointed trustee under either Chapter 7 or 11 and any successors thereto.

(c)    Superpriority Claim.  The Lender has an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in the Case, subject to the Professional Fee Escrow (defined below) to the extent of any postpetition Diminution in Value (the "Superpriority Claim").

(d)    Priority of the Superpriority Claim.  The Superpriority Claim is not junior to any claims, except (i) those entitled to share in the Professional Fee Escrow, (ii) any claim for unpaid statutory fees due to the United States Trustee pursuant to 28 U.S.C. § 1930, and (iii) an amount not to exceed $20,000 for any trustee appointed under Chapter 7 of the Bankruptcy Code and his or her professionals.

(e)    Absolute Assignment of Rents.  Notwithstanding anything to the contrary, the Debtor has absolutely assigned its Rents to the Lender.  Accordingly, upon the Termination

Date, any and all Rents collected by or owed to the Debtor is not property of the Debtor's bankruptcy estate, but the property of the Debtor.

8.      Debtor's Professional Fees. Any agreed payments to professionals retained by the Debtor or any statutory committee of unsecured creditors (the "Committee") under sections 327 and/or 328 of the Bankruptcy Code ("Authorized Professionals") set forth in the Budgets may be set aside and deposited into an attorney escrow account at Webber McGill LLC (the "Professional Fee Escrow"). Funds in the Professional Fee Escrow up to the amount authorized by any Budgets approved by the Lender shall be preserved for the benefit of the Authorized Professionals, subject to the allowance of fees and reimbursement of expenses by the Bankruptcy Court. The Debtor shall not make any deposit into the Professional Fee Escrow if it is not current on all postpetition obligations to maintain insurance and pay property taxes, and if it has not timely made all Adequate Protection Payments to the Lender that have come due pursuant to the Budget. Any deposits made to the Professional Fee Escrow while those obligations are outstanding shall be void and paid to the Lender by the escrow agent.

9.      Reporting Requirement. In addition to, and without limiting, whatever rights to access the Lender has under the Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtor shall promptly and without delay permit representatives, agents, and employees of the Lender to: (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) to discuss the Debtor's affairs, finances, and condition with the Debtor, Caleca or any other principals of the Debtor, any third party manager of the Debtor, and the Debtor's advisors. In addition to the reporting requirements related to the Budget set forth above, the Debtor and its property manager are required to provide a monthly management report within twenty (20) days after the end of each month during the term of this

Stipulation (commencing July 30, 2024). The monthly management report shall set forth: (i) all receipts, disbursements, cash flow, and all changes in the Debtor Property, or interests in or claims against the assets, that have occurred; (ii) a capital expenditures report including the type and amount of each capital expenditure made or proposed during the reporting period; (iii) the condition of the property; (iv) any recommendations as to actions needed to preserve and protect the property; (v) marketing and leasing efforts; and (vi) any other information the Debtor or property manager determines is relevant to the property and its management.

10.     Events of Default. The following events shall each constitute an event of default hereunder (collectively, the "Events of Default"):

(a)     the violation of or failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Stipulation (including the Budget);

(b)     the failure of the Debtor to timely make any Adequate Protection Payments;

(c)     the proposal of a Budget by the Debtor that is not reasonably acceptable to the Lender;

(d)     the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Postpetition Collateral that is equal or senior to any security interest, mortgage or other lien of the Lender, except for real estate taxes, or (ii) entitled to priority administrative status that is equal or senior to that granted to the Lender except as expressly set forth herein;

(e)     the Debtor's failure to maintain adequate insurance on the Debtor Property, including, without limitation, property, casualty, and liability insurance policies, at historical and commercially appropriate levels;

(f)      the Debtor's failure to timely pay all post-petition real estate taxes due with respect to the Debtor Property;

(g)      any lien or security interest purported to be created under the Loan Documents shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the respective Loan Documents or herein;

(h)      the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Postpetition Collateral, or (ii) with respect to any lien of or the granting of any lien on any Postpetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

(i)      the reversal, vacatur, or modification (without the express prior written consent of the Lender, in its sole discretion) of the Final Order;

(j)      dismissal of the Case or conversion of the Case to a case under Chapter 7;

(k)      the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Lender, in its sole discretion, unless the proceeds of such sale satisfies Lender's allowed secured claim;

(l)      the granting of any motion providing for reconsideration, stay, or vacatur of the Final Order; or (1) the Debtor shall assert in any pleading filed in any court that any material provision of this Stipulation is not valid and binding for any reason, or (2) any material provision

-12-

of this Stipulation shall, for any reason, cease to be valid and binding without the prior written consent of the Lender;

(m)     the Debtor shall fail to comply with any of the following milestones (collectively, the "Bankruptcy Milestones"), subject to both the Debtor's and Lender's right to (a) agree to the extension of the Bankruptcy Milestones, or (b) timely seek the Bankruptcy Court's authority for the continued use of Cash Collateral and Rents over the Lender's objection to the extent it does not consent to the extension of any Bankruptcy Milestone:

(i)     No later than October 31, 2024, the Debtor shall file with the Court either (a) a plan of reorganization or liquidation (a "Plan") in a form reasonably acceptable to the Lender; or (b) a motion to sell the Debtor Property pursuant to section 363 of the Bankruptcy Code (a "363 Sale") in a form and manner reasonably acceptable to the Lender.   The Debtor shall consult the Lender in good faith in connection with any proposed Plan or 363 Sale;

(ii)    No later than December 31, 2024, the Debtor will obtain the Bankruptcy Court's confirmation of a Plan or approval of a 363 Sale; and

(iii)   No later than January 15, 2025, the Debtor will bring its Plan effective or close on a 363 Sale.

(n)     the institution of a Challenge (as defined below) after a party in interest has been granted standing by order of the Court; and

(o)     the Debtor proposing any Plan or 363 Sale that will not produce enough available funds to satisfy the Lender's allowed secured claim in full upon consummation of the Plan or 363 Sale unless expressly consented to by the Lender.

11.     Remedy Upon Event of Default.  Immediately upon the occurrence and during the continuation of an Event of Default, the Lender may declare a termination, reduction, or restriction of the ability of the Debtor to use any Cash Collateral or Rents (any such declaration shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by e-mail to counsel to the Debtor, counsel to any Committee, and the United States Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").  On the Termination Declaration Date, the Debtor's right to use Cash Collateral and Rents shall automatically cease, except as provided herein.  Within five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtor shall be entitled to seek an emergency hearing with the Bankruptcy Court seeking a determination of whether an Event of Default has occurred and continues and/or any other appropriate relief related to the Debtor's continued use of Cash Collateral and Rents on a non-consensual basis, with the rights and objections of all parties reserved with respect thereto.  During the Remedies Notice Period, the Parties consent pursuant to Bankruptcy Rule 9006 to a hearing on any motion challenging the occurrence and/or continuation of an Event of Default or otherwise on shortened time and agree that such matter would be heard on an emergency basis.  Unless the Bankruptcy Court determines otherwise during the Remedies Notice Period, the Lender shall have the right to submit (a) a certificate of non-performance (a "Non-Performance Certificate") and (b) a proposed order (a "Termination Order") to the Bankruptcy Court terminating the automatic stay at the end of the Remedies Notice Period without further notice, and the Debtor shall no longer have the right

-14-

to use Cash Collateral and Rents and, upon entry of the Termination Order, the Lender shall be permitted to exercise any and all remedies set forth herein or in their respective Loan Documents, as applicable, and as otherwise available at law against the Postpetition Collateral and Rents, without further notice, application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the Postpetition Collateral or any other rights and remedies granted to the Lender with respect thereto pursuant to the Loan Documents or this Stipulation, as applicable.

12.     Bankruptcy Milestones. As a condition to the use of the Cash Collateral, the Debtor shall comply with the Bankruptcy Milestones. For the avoidance of doubt, the failure of the Debtor to comply with any of the Bankruptcy Milestones shall (a) constitute an Event of Default under this Stipulation; and (b) subject to the expiration of the Remedies Notice Period and the Lender's submission to the Court of a Non-Performance Certificate and a Termination Order, result in the termination of the Debtor's authority to use Cash Collateral and Rents under this Stipulation.

13.     Cooperation in any Proposed Marketing and Sale of the Debtor Property. If the Debtor elects to, or is ordered to, pursue a 363 Sale of the Debtor Property, it will consult with the Lender in good faith with regards to the selection of a mutually agreeable, nationally recognized brokerage firm to market and sell the property (the "Broker"). The Lender will consult with the Debtor and Broker in good faith with respect to whether any extension of any of the Bankruptcy Milestones is necessary in order to market and sell the Debtor Property in a manner that will obtain the highest and best price.

14. Modification of the Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement this Stipulation.

15. Preservation of Rights Under § 507(b). Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the Case. Nothing contained herein shall be deemed a finding by the Bankruptcy Court, or an acknowledgment by the Lender, that the adequate protection granted herein does in fact adequately protect the Lender against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral and Rents).

16. Enforceable Upon Approval. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon entry of any Interim Order on an interim basis, and a Final Order on a final basis.

17. Right to Challenge. The Debtor's stipulations contained in this Stipulation with respect to the validity, perfection, or amount of the Secured Prepetition Obligations and the Prepetition Liens and Rents shall be binding on the Debtor and all parties in interest, provided, however, that the Debtor and any other party in interest shall have sixty (60) days (or such longer period as the Court orders for cause shown before the expiration of such period) from the entry of the Final Order to investigate the facts and file a complaint or a motion seeking authority to commence litigation as a representative of the estate challenging the amount, validity or enforceability of the Secured Prepetition Obligations or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims or causes of action on behalf of the Debtor's estate against the Lender relating to the Secured Prepetition Obligations or the Prepetition Liens

-16-

(a "Challenge"). Notwithstanding anything to the contrary herein, if no such Challenge is timely commenced: (i) the stipulations with respect to the validity, perfection and amount of the Secured Prepetition Obligations, the Prepetition Liens, and the assignment of Rents, shall be binding on the Debtor, any Committee, or any other creditor or party in interest in this Case; and (ii) the claims, liens and security interests of the Lender shall, without further order of the Bankruptcy Court, be deemed to be finally allowed for all purposes in the Case and any successor case, and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise. If a Challenge is timely commenced, any Debtor's stipulations that are not the specific subject of the Challenge(s) shall be binding on the Debtor and all parties in interest; provided, that if and to the extent that a Challenge is withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtor and all parties in interest.

18. Good Faith. The Lender, Debtor, and their respective advisors and employees have acted in good faith in negotiating, consenting, and agreeing to the Debtor's use of the Cash Collateral and Rents as contemplated and provided by this Stipulation. The negotiation of the terms and provisions of this Stipulation have been conducted at arm's length, and such terms and provisions are fair and reasonable under the circumstances and reflect the Debtor's exercise of reasonable business judgment.

19. No Lender Liability for the Lender. Nothing in this Stipulation shall in any way be construed or interpreted to impose or allow the imposition on the Lender or any of its advisors or employees any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.

20.     <u>No Marshalling</u>.  Subject to 11 U.S.C. § 506 based on the value of the collateral, the Lender shall be entitled to apply the payments or the proceeds of the Prepetition Collateral in accordance with the provisions of the Loan Documents, and in no event shall the Lender be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

21.     <u>Non-Waiver of Rights of Lender Against Third Parties and Debtor</u>. Entry of an Interim Order or Final Order approving this Stipulation shall be without prejudice to any and all rights, remedies, claims and causes of action which Lender may have against the Debtor, Caleca, or third parties, nor shall it constitute a stay of Lender's non-bankruptcy rights against third parties. This Stipulation is without prejudice to the right of Lender to seek relief, subject to the terms and conditions hereof, from the automatic stay in effect pursuant to Section 362 of the Bankruptcy Code, or any other relief in the Case, and the right of the Debtor or any other party to oppose any such relief.  The provisions of this Stipulation shall be binding upon and inure to the benefit of Lender, the Debtor, and their respective successors and assigns.

22.     <u>Execution of Counterparts</u>. This Stipulation may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

23.     <u>Headings</u>. All headings used in the Stipulation are for reference purposes only and do not comprise part of the terms hereof.

24.     <u>Failure to Enforce Rights Not a Wavier</u>.  No failure of Lender to enforce any right granted under this Stipulation, any of the Loan Documents or otherwise shall represent a waiver of such right.

-18-

25. <u>Retention of Jurisdiction</u>. The Bankruptcy Court has and will retain jurisdiction to enforce this Stipulation according to its terms.

26. <u>Modifications Must be in Writing and Approved</u>. No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto and approved by the Court.

*[Continued on next page]*

IN WITNESS WHEREOF, the parties have executed this Stipulation, intending to be legally bound, as of the date first above written.

Dated: _____, New Jersey
July __, 2024

By: _____
Thomas J. Caleca, Authorized
Signatory as Manager of ProudLiving
Managing Member I, LLC, Managing
Member of Debtor, and Individually
as Guarantor

Dated:    Cedar Knolls, New Jersey
July __, 2024

**WEBBER McGILL LLC**

By: _____
Douglas J. McGill
100 E. Hanover Ave., Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
Email: dmcgill@webbermcgill.com

*Counsel to PLA Four 107 LLC, Debtor*

Dated:    New York, New York
July 30, 2024

**107 NEW STREET OWNER LLC**

By: _____
Name
Title

Dated:    New York, New York
July 30, 2024

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: _____
Fred Stevens
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Email: fstevens@klestadt.com
         bscott@klestadt.com

*Counsel to 107 New Street Owner LLC,
Lender*

-20-

## Exhibit 1


## Budget

Exhibit 1 – Page-1-

**PLA Four 107 LLC**
**13 Week Projection**
**6/21/2024**

| | Week Beginning 9/6/2024 | Week Beginning 9/13/2024 | Week Beginning 9/20/2024 | Week Beginning 9/27/2024 | Week Beginning 10/4/2024 | Week Beginning 10/11/2024 | Week Beginning 10/18/2024 | Week Beginning 10/25/2024 | Week Beginning 11/1/2024 | Week Beginning 11/8/2024 | Week Beginning 11/15/2024 | Week Beginning 11/22/2024 | Week Beginning 11/29/2024 | 8/6/2024 through 11/29/2024 Total 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | |
| Sales | 19,551 | 19,551 | 20,203 | 20,188 | 20,168 | 20,168 | 20,168 | 20,168 | 22,649 | 22,649 | 22,649 | 22,649 | 21,767 | 272,526 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 19,551 | 19,551 | 20,203 | 20,188 | 20,168 | 20,168 | 20,168 | 20,168 | 22,649 | 22,649 | 22,649 | 22,649 | 21,767 | 272,526 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Utilities | 2,930 | 2,930 | 3,028 | 3,036 | 3,047 | 3,047 | 3,047 | 3,047 | 3,270 | 3,270 | 3,270 | 3,270 | 3,278 | 40,468 |
| Bank Fees | 15 | 15 | 16 | 16 | 16 | 16 | 16 | 16 | 17 | 17 | 17 | 17 | 17 | 209 |
| Insurance Financing | 9,600 | - | - | - | 3,840 | - | - | - | 3,840 | - | - | - | - | 17,280 |
| Legal Fees | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 46 |
| Leasing Expense | 1,098 | 1,098 | 1,134 | 1,121 | 1,102 | 1,102 | 1,102 | 1,102 | 1,144 | 1,144 | 1,144 | 1,144 | 1,121 | 14,555 |
| Management Fees | 752 | 752 | 777 | 779 | 783 | 783 | 783 | 783 | 841 | 841 | 841 | 841 | 844 | 10,397 |
| Other Expenses | 360 | 360 | 372 | 373 | 374 | 374 | 374 | 374 | 402 | 402 | 402 | 402 | 403 | 4,970 |
| Property Taxes | - | - | - | - | - | - | - | - | - | 47,260 | - | - | - | 47,260 |
| Professional Fees | 313 | 313 | 324 | 325 | 326 | 326 | 326 | 326 | 350 | 350 | 350 | 350 | 351 | 4,328 |
| Repair & Maintenance | 1,204 | 1,204 | 1,244 | 1,227 | 1,204 | 1,204 | 1,204 | 1,204 | 1,244 | 1,244 | 1,244 | 1,244 | 1,216 | 15,891 |
| Other Repairs & Maintenance | 292 | 292 | 301 | 302 | 303 | 303 | 303 | 303 | 325 | 325 | 325 | 325 | 326 | 4,028 |
| Salary Expense | 2,007 | 2,007 | 2,074 | 2,046 | 2,007 | 2,007 | 2,007 | 2,007 | 2,074 | 2,074 | 2,074 | 2,074 | 2,026 | 26,486 |
| Rental Loss | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense - Mortgage | 23,000 | - | - | - | 23,000 | - | - | - | 23,000 | - | - | - | - | 69,000 |
| Total Operating Expenses | 41,574 | 8,974 | 9,274 | 9,227 | 36,006 | 9,166 | 9,166 | 9,166 | 36,510 | 56,929 | 9,670 | 9,670 | 9,585 | 254,917 |
| **Other** | | | | | | | | | | | | | | |
| Professional Fees | 1,173 | 3,173 | 4,262 | 2,053 | 1,775 | 1,775 | 1,775 | 1,775 | 1,942 | 1,942 | 1,942 | 1,942 | 2,199 | 27,727 |
| Contingency | 743 | 359 | 371 | 369 | 1,440 | 367 | 367 | 367 | 1,460 | 2,277 | 387 | 387 | 383 | 9,277 |
| Total Other Disbursements | 1,916 | 3,532 | 4,633 | 2,422 | 3,215 | 2,141 | 2,141 | 2,141 | 3,403 | 4,219 | 2,329 | 2,329 | 2,582 | 37,004 |
| Total Operating Expenses/Other Disbursements | 43,490 | 12,506 | 13,907 | 11,650 | 39,221 | 11,307 | 11,307 | 11,307 | 39,913 | 61,149 | 11,999 | 11,999 | 12,167 | 291,921 |
| Net Cash Flow | (23,940) | 7,044 | 6,296 | 8,538 | (19,053) | 8,861 | 8,861 | 8,861 | (17,264) | (38,500) | 10,650 | 10,650 | 9,600 | (19,395) |
| Cumulative Net Cash Flow | (23,940) | (16,895) | (10,599) | (2,061) | (21,114) | (12,253) | (3,392) | 5,469 | (11,795) | (50,295) | (39,645) | (28,995) | (19,395) | (19,395) |
| Beginning Cash | 19,717 | (4,222) | 2,822 | 9,118 | 17,656 | (1,397) | 7,464 | 16,325 | 25,186 | 7,923 | (30,578) | (19,928) | (9,278) | 19,717 |
| Ending Cash | (4,222) | 2,822 | 9,118 | 17,656 | (1,397) | 7,464 | 16,325 | 25,186 | 7,923 | (30,578) | (19,928) | (9,278) | 323 | 323 |

<u>Exhibit 2</u>

<u>WIRE, ACH & Mailing Instructions</u>

**For Wire Transfers:**

| | |
|---|---|
| Bank: | Bank of America |
| | 1185 Avenue of the Americas |
| | New York, NY |
| ABA #: | 026 009 593 |
| Account #: | 00947-836-XXXX *(Please Call to Confirm)* |
| Beneficiary: | Arbor Multifamily Lending, LLC |
| | Receipts Clearing |
| Reference: | #348183 – 107 New Street |

**For Electronic Funds Transfers (aka ACH Transfers):**

| | |
|---|---|
| Bank: | Bank of America |
| | 1185 Avenue of the Americas |
| | New York, NY |
| ABA #: | 011 000 138 |
| Account #: | 00947-836-XXXX *(Please Call to Confirm)* |
| Beneficiary: | Arbor Multifamily Lending, LLC |
| | Receipts Clearing |
| Reference: | #348183 – 107 New Street |

**For Check Payments and Correspondence:**

| | |
|---|---|
| Regular or Overnight Mail: | Arbor Multifamily Lending, LLC |
| | 500 Colvin Woods Pkwy |
| | Tonawanda, NY 14150 |
| Reference: | #348183 – 107 New Street |

<u>*IMPORTANT NOTICE REGARDING SECURITY AND
PROTECTING AGAINST FRAUD!*</u>

**Please note that Arbor will never provide complete account information via email.**

**To confirm the account number and payment amount, you must contact the Asset Management Support aka the Structured Payoff Group at (516) 506-4281. If there is no answer, please leave your name, company name, contact number, loan name, and loan number and your call will be returned as soon as possible. Should you have any questions, please contact your Asset Manager.**

Exhibit 2 – Page-1-